# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| CHAMPS SPORTS BAR & GRILL CO. and FASHIONADVICE.COM, LLC D/B/A SAM MALOUF, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MERCURY PAYMENT SYSTEMS, LLC,<br><br>Defendant. | Case No. 1:16-CV-00012-MHC |
| ARCHER'S BARBEQUE, LLC and WOKCHOW DEVELOPMENT, LLC, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MERCURY PAYMENT SYSTEMS, LLC, and GLOBAL PAYMENTS DIRECT, INC.,<br><br>Defendants. | Case No. 1:15-CV-04311-MHC |

## *CHAMPS* PLAINTIFFS' MOTION TO CONSOLIDATE
## AND SUPPORTING MEMORANDUM OF LAW

Plaintiffs Champs Sports Bar & Grill Co. and FASHIONADVICE.COM, LLC d/b/a Sam Malouf (collectively the "*Champs* Plaintiffs" or "Movants"), pursuant to Federal Rule of Civil Procedure 42(a), move to consolidate two closely-related class action lawsuits pending before this Court: *Champs Sports Bar & Grill Co. v. Mercury Payment Systems, LLC,* Case No. 1:16-00012-MHC (the "*Champs* Action") and *Archer's Barbeque, LLC v. Mercury Payment Systems, LLC*, Case No. 1:15-04311-MHC (the "*Archer's Barbeque* Action"). The complaints filed in each action are attached as Exhibits A and B to this motion.

Both actions – which were docketed within a few weeks of each other – involve common issues of fact and law and are materially identical. The two cases are brought on behalf of the same putative classes against the same defendant; assert the same and similar legal claims; arise out of the defendant's common course of conduct and standardized billing practices under the identical form contract; and will involve the same witnesses, documents, and other evidence. Consolidation will enhance efficiency, result in an overwhelming savings of resources for the parties and the Court, and avoid the problems inevitably created by dueling class actions.

2

Movants further request that, after the cases are consolidated, the Court schedule a conference for the purpose of hearing the parties' ideas for how the consolidated cases should be managed. Issues to be considered at the conference might include, for example, whether plaintiffs should file a consolidated master complaint, whether the Court should appoint interim class counsel pursuant to Federal Rule of Civil Procedure 23(g), and what additional case management orders may be necessary. Movants anticipate the parties may be able to reach agreement on many of these issues before the conference and present their joint proposals for the Court's consideration.

## FACTUAL BACKGROUND

Mercury Payment Systems, Inc. ("Mercury") contracts with merchants to handle their customers' credit and debit card transactions. In conjunction with a back-end processing company called Global Payments Direct, Inc. ("Global"), Mercury acts as an intermediary between those involved in a payment card transaction and ensures that the transaction is properly documented, the appropriate accounts are debited and credited, and the financial institutions and card networks receive the fees and assessments to which they are entitled. Under its arrangements with merchants, Mercury collects a per-transaction fee for its services and is required to pass through at cost the fees and assessments charged by

the financial institutions and card networks. Each month, Mercury sends invoices that summarize each merchant's transactions and supposedly disclose all of the fees and assessments that were charged.

Movants filed the *Champs* Action on January 4, 2016, alleging that for several years Mercury has surreptitiously overcharged merchants by inflating the fees and assessments that should have been passed through at cost and otherwise collecting fees to which Mercury is not entitled. Asserting claims for declaratory relief, fraud and unjust enrichment, Movants seek to recover the amounts they were overcharged on behalf of themselves and a national class of similarly-situated merchants. Movants also seek a declaration that certain provisions in Mercury's form Card Services Agreement, to which each merchant is a party, are unconscionable or otherwise unenforceable, including specifically provisions limiting damages, shortening the statute of limitations, banning class actions, and requiring that merchants pay Mercury's attorneys' fees and expenses regardless of the outcome of the litigation.

On December 11, 2015, less than three weeks before the *Champs* Action was filed, a virtually identical class action – the *Archer's Barbeque* Action – was

removed from the Superior Court of Fulton County and docketed with this Court.[1] That action challenges the same practices and contractual provisions at issue in the *Champs* Action, seeks to recover the same overcharges on behalf of essentially the same class, and brings the same claim for unjust enrichment. The only material differences between the two cases are that the *Archer's Barbeque* Action names Global as a defendant, asserts an additional breach of contract claim, and does not assert a fraud claim.

Procedurally, neither case is far advanced. The *Champs* Action has been served, but Mercury has not yet responded to the complaint. There has been limited activity in the *Archer's Barbeque* Action, but the Court has not yet issued any substantive rulings and no issue is even ripe for decision. On January 4, 2016, the *Archer's Barbeque* plaintiffs moved for partial summary judgment seeking a declaration that provisions in the Card Services Agreement are unconscionable, including specifically the requirement that they pay Mercury's attorneys' fees even

---

[1] The *Archer's Barbeque* Action was filed in state court on October 9, 2015 by Buckner Miles in Coral Gables, Florida and local Atlanta counsel. Several months earlier and after a lengthy investigation, the plaintiffs' lawyers in the *Champs* Action – a group led by Kenneth Canfield of Doffermyre Shields Canfield & Knowles, LLC in Atlanta and Adam Levitt of Grant & Eisenhofer's Chicago office – filed a similar action against one of Mercury's competitors. That action, styled *The Dinner Bell Café, Inc. v. North American Bancard, LLC,* Case No. 1:15-CV-03059-SCJ, is proceeding before Judge Jones. Plaintiffs do not seek consolidation of the North American Bancard case.

5

if successful. Defendants have not yet responded. On January 11, 2016, the parties filed a Joint Preliminary Report and Discovery Plan, but they have asked the Court to stay its proposed deadlines. And, on January 15, 2016, last Friday, defendants filed a motion to dismiss and moved to stay consideration of plaintiffs' motion for partial summary judgment. A response is not due for several weeks.

## ARGUMENT AND CITATION OF AUTHORITIES

Consolidation of actions pending before the same court is governed by Federal Rule of Civil Procedure 42(a), which provides: "If actions before the court involve a common question of law or fact, the court may … consolidate the actions; or issue any orders to avoid unnecessary cost or delay." While the decision whether to consolidate is a matter of discretion, the Eleventh Circuit has "encouraged trial judges to make good use of Rule 42(a) … in order to expedite the trial and eliminate unnecessary repetition and confusion." *Hendrix v. Raybestos-Manhattan, Inc.,* 776 F.2d 1492, 1495 (11th Cir. 1985); *see also, e.g., Halo Wireless, Inc. v. TDS Telecommunications Corp.,* No. 2:11-CV-158-RWS, 2012 WL 246393 at *2 (N.D. Ga. Jan. 26, 2012). The consent of the parties is not required. *See, e.g.,* 9A C. Wright & A. Miller, *Federal Practice and Procedure,* § 2383 at 32 (3rd ed. 2008).

According to the Eleventh Circuit, in determining whether to consolidate cases, a court should consider:

> whether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications …, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives."

*Hendrix*, 776 F.2d at 1495; *see also, e.g., Halo Wireless, Inc.,* 2012 WL 246393 at *2; *Radcliff v. Dolgencorp, LLC*, No. 4:10-CV-150, 2010 WL 3785582 at *2 (S.D. Ga. Sept. 27, 2010). Good candidates for consolidation are cases that involve the same parties, assert closely related torts, or seek the same relief. *See, e.g., Federal Practice & Procedure,* §2384 at 52, 53, 58; *Newberg on Class Actions,* §10:35 at 731 (5th ed. 2013). Consolidation is particularly appropriate when the actions are likely to involve the same evidence and arise from a common course of conduct. *See, e.g., Hanson v. District of Columbia,* 257 F.R.D. 19, 21 (D.D.C. 2009).

The requirements for consolidation are met here. As explained below, the *Champs* Action and the *Archer's Barbeque* Action share common issues of fact and law. Further, consolidation would reduce the burden on the Court and parties, save considerable expense, preclude the need for repetitive discovery and duplicative briefing of the same legal issues, avoid the problems of dueling class actions, and benefit putative class members. At the same time, no party would be

prejudiced or inconvenienced, particularly since both actions are in their infancy. Accordingly, Movants' consolidation motion should be granted.

## I. The Two Cases Involve Common Questions of Law and Fact.

Not only do the *Champs* Action and the *Archer's Barbeque* Action involve at least one common question of law or fact, as required by Rule 42(a), but the actions are materially identical across the board. That conclusion is readily apparent simply by reading the two complaints, each of which attaches the identical Card Services Agreement as Exhibit A and challenges the same, allegedly improper billing practices by Mercury in performing under the agreement.

Given the overwhelming similarities between the two complaints, a side by side comparison of their specific allegations is hardly necessary to show that the requirements of Rule 42 are satisfied. However, a few specific examples illustrate the cases share common issues of law and fact. Both complaints allege that:

(1) Plaintiffs in each case entered into the same Card Services Agreement with Mercury. *Compare* Ex. A, ¶¶ 35, 94 *with* Ex. B, ¶ 114.

(2) Mercury inflated fees and assessments charged under the agreement that should have been passed through at cost, including MasterCard's "NABU" fees and Visa's "APF" fees. *Compare* Ex. A, ¶¶ 53–59 *with* Ex. B, ¶¶ 54–57.

(3) Mercury inflated the "interchange rates" charged by the banks that issued the payment cards used by plaintiffs' customers. *Compare* Ex. A, ¶¶ 60–62 *with* Ex. B, ¶¶ 42–53.

(4) Mercury added unwarranted and unauthorized "junk fees," including monthly maintenance fees, PCI or Data Security fees and regulatory compliance fees. *Compare* Ex. A, ¶¶ 67–70 *with* Ex. B, ¶¶ 58–63.

(5) Mercury improperly disguised and concealed the inflated and improper fees and in so doing acted deceptively. *Compare* Ex. A, ¶¶ 52–56, 63–66 *with* Ex. B, ¶¶ 44-51, 57.

(6) Mercury attempted to immunize itself through adhesive, unconscionable and unfair terms in the Card Service Agreement. *Compare* Ex. A, ¶¶ 84–86 *with* Ex. B, ¶¶ 71–72.

(7) Mercury was unjustly enriched in the same manner by fraudulently and surreptitiously collecting the fees to which it was not entitled. *Compare* Ex. A, ¶¶ 117-120 *with* Ex. B, ¶¶ 122-128.

The complaints, in addressing the Rule 23(a) "commonality" requirement for class certification purposes, also allege that the same issues of fact and law are involved in the cases. *Compare* Ex. A, ¶ 76 *with* Ex. B, ¶ 97.

Additionally, the plaintiffs in each of the actions seek to represent the same putative class, namely merchants who paid Mercury's improper charges. *Compare Ex. A,* ¶ 72 (defining the class as "[a]ll persons or entities that were charged (a) an inflated NABU, APF, or other access fee, and/or (b) an inflated interchange rate, and/or (c) any other fee not authorized by the Card Services Agreement during the time period relevant to this action") *with* Ex. B, ¶ 90 (defining the class as "[a]ll Mercury customers in the United States who paid a fee or charge that was not authorized by the Card Services Agreement.")  And both actions seek the same

9

relief, including a declaratory judgment that the identical provisions of the Card Services Agreement are unenforceable; return of the monies Mercury improperly collected; punitive damages; pre- and post-judgment interest; and attorneys' fees. *Compare* Ex. A, pp. 39-40 *with* Ex. B, p. 26-27.

There are only two material differences between the two complaints, as noted above. First, the *Archer's Barbeque* Action names Global as a defendant; the *Champs* Action does not. Second, the *Archer's Barbeque* Action has a breach of contract claim which is not in the *Champs* Action, and only the *Champs* Action alleges fraud claims. Particularly in light of the overwhelming ways in which the complaints are materially identical, these two differences are of no significance to the Rule 42 consolidation analysis. *See, e.g., Am. Fam. Home Ins. Co. v. Hillery,* No. 08-0547-WS-C, 2009 WL 2711901, at *2 (S.D. Ala. Jul. 20, 2009) ("cases may be consolidated even where certain defendants are only named in one of the complaints") (internal citations omitted): *Kaplan v. Gelfond,* 240 F.R.D. 88, 91 (S.D.N.Y. 2007) ("Differences in causes of action … do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law").

## II.  Practical Considerations Greatly Favor Consolidation

Because there are issues of fact and law common to both cases, Rule 42(a)'s threshold requirement is satisfied, allowing the Court to consolidate these cases if

it so chooses. That the Court, in fact, should exercise its discretion to consolidate the two cases is strongly supported by a host of practical considerations, including each of those identified by the Eleventh Circuit in the *Hendrix* case cited above.

There can be no question that requiring the two actions to be litigated separately would impose a significant burden on the parties and witnesses, not to mention on the Court. Discovery would be an exercise in duplication, wasted effort, and needless inconvenience. Plaintiffs' counsel would separately prepare and serve essentially the same written discovery to which Mercury would be forced to respond. Witnesses employed by Mercury and Global would need to be deposed twice as would third-party witnesses who have knowledge of relevant facts. Repetitive discovery disputes are likely to arise. And case management orders could impose inconsistent obligations on the parties.

The burden on the Court would similarly be immense. The same legal issues likely would need to be decided in each case and thus would trigger duplicative briefing and rulings. Further, to avoid being adversely affected by rulings in each other's cases, plaintiffs' counsel would have to stay abreast of developments in each case and, on critical issues, might be forced to intervene or seek leave to file as *amici curiae* so the Court would have the benefit of their views. While some efficiencies of scale will occur as the Court becomes familiar

with the underlying facts and law and rules the same way in both cases, failure to consolidate the two cases conceivably could double the Court's workload.[2]

Separate litigation of the cases would also substantially increase the expense of the litigation. The parties' attorneys will spend more time and incur expenses that could easily be avoided by consolidation. For example, even if depositions of Mercury's witnesses in Colorado were cross-noticed in both cases, two sets of plaintiffs' lawyers would have to incur the same travel costs. And multiple sets of experts for the plaintiffs likely would have to analyze the same data and opine on the same issues, all at considerable expense.

There also are particular burdens, inefficiencies, risks, and uncertainties that arise where, as here, two competing plaintiffs' groups litigate essentially the same class actions simultaneously. *See generally* R. Wasserman, "Dueling Class Actions," 80 B.U. Law Rev. 461 (2000). Among the problems are the potential for a "reverse auction," allowing Mercury to play off each group in the hope of achieving a better settlement for itself at the expense of the class; confusion of absent class members about what is occurring, particularly if multiple notices are

---

[2] Although the risk would be minimized because the same court is managing both cases, separately litigating the two class actions also could create the possibility of inconsistent adjudications depending upon how each case proceeds, the timing of various rulings, the number of class members who opt out of any certified class, and the results of trial.

sent to them; waste of resources to the detriment of the class; and pressure on plaintiffs' counsel to rush to a final judgment so that the doctrine of *res judicata* might wipe out the competition. Consolidation will minimize, if not eliminate, these potential problems. *See Id.* at 508-611. As a result, federal courts routinely consolidate dueling class actions that pend in the same district. *See, e.g., Id.*; *In re HSBC USA, NA Debit Card Overdraft Fee Litigation,* No. 2:13-MD-02451, 2013 WL 3816509, at *9 (E.D.N.Y. Jul. 22, 2013) (consolidating similar class actions involving the same set of facts against the same defendant to save the resources of the parties and court).

Finally, consolidation will not prejudice any of the parties, create any confusion, or complicate trial of the issues in dispute. To the contrary, as described above, consolidation will serve the interests of all the parties and the Court. Accordingly, Movants' motion for consolidation should be granted.

## III.  A Conference Should be Set After the Cases are Consolidated

Assuming the two cases are consolidated, the Court will be faced with a number of management issues typical of complex litigation. To address these issues, Movants respectfully suggest that the Court schedule an early case management conference. Among the potential matters for discussion are the use of a master consolidated complaint to serve as the vehicle for litigating all of the

issues raised in both actions; whether the Court should appoint interim class counsel pursuant to Rule 23(g) to lead the prosecution of plaintiffs' claims; entry of a joint scheduling order and discovery plan to govern the consolidated proceedings; and the use of other case management orders, such as a discovery and ESI protocol.

The Court is empowered to hold a conference and enter orders to manage the litigation. *See, e.g.* Fed. R. Civ. P. 42(a) ("the court may … issue any other orders to avoid unnecessary cost and delay"); Fed. R. Civ. P. 16, 23(d), and 23(g); *In re Propulsid Prod. Liab. Litigation,* 208 F.R.D. 133, 141 (E.D. La. 2002) (holding that Rule 42(a) permits a court to order the use of a master consolidated complaint). Indeed, such conferences and orders are commonplace in class actions and consolidated proceedings because they enable the litigation to proceed more efficiently and effectively. *See generally Manual for Complex Litigation, Fourth* §11.21; *Federal Practice and Procedure,* § 2385.

Typically, when an initial case management conference is scheduled in litigation of this nature, counsel for the parties – either on their own initiative or at the court's direction – will meet among themselves to set a suggested agenda, seek agreement on the terms of proposed case management orders, and resolve potential areas of dispute. Movants' counsel anticipate that the same process would occur

here and that agreement likely can be reached on an agenda and other matters.

## CONCLUSION

For all of the foregoing reasons, Movants respectfully request that the Court grant their motion and consolidate the *Champs* Action and the *Archer's Barbeque* Action, and, after consolidating the two actions, schedule a case management conference to address how the consolidated proceeding will be managed.

Respectfully submitted,

/s/ Kenneth S. Canfield
**DOFFERMYRE SHIELDS CANFIELD & KNOWLES, LLC**
Kenneth S. Canfield
Ga. Bar No. 107744
Jonathan Palmer
Ga. Bar No.
1355 Peachtree Street, Suite 1600
Atlanta, Georgia  30309
Tel: (404) 881-8900
kcanfield@dsckd.com
jpalmer@dsckd.com

**GRANT & EISENHOFER P.A.**
Adam J. Levitt
30 North LaSalle Street, Suite 2350
Chicago, Illinois  60602
Tel: (312) 214-0000
Fax: (312) 214-0001
alevitt@gelaw.com

**GRANT & EISENHOFER P.A.**
Kyle J. McGee
123 Justison Street
Wilmington, Delaware  19801
Tel: (302) 622-7000
kmcgee@gelaw.com

**THE DICELLO LAW FIRM**
Mark DiCello
Mark Abramowitz
7556 Mentor Avenue
Mentor, Ohio  44060
Tel: (440) 953-8888
madicello@dicellowlaw.com

*Counsel for Plaintiffs and the Proposed Class*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify, in compliance with Local Rule 5.1(c), that the foregoing motion and brief has been prepared using 14-point Times New Roman font.

/s/ Kenneth S. Canfield

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the foregoing **CHAMPS PLAINTIFFS' MOTION TO CONSOLIDATE AND SUPPORTING MEMORANDUM OF LAW** in both the *Champs* and the *Archer Barbeque* actions with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

This 19th day of January, 2016.

/s/ Kenneth S. Canfield