IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CHAMPS SPORTS BAR & GRILL CO., FASHIONADVICE.COM, LLC d/b/a SAM MALOUF, ARCHER'S BARBEQUE, LLC, and WOKCHOW DEVELOPMENT, LLC, individually and on behalf of all others similarly situated, | JUDGE MARK H. COHEN |
| Plaintiffs, | |
| v. | Case No. 1:16-CV-00012-MHC |
| MERCURY PAYMENT SYSTEMS, LLC and GLOBAL PAYMENTS DIRECT, INC., | |
| Defendants. | |

## CASE MANAGEMENT ORDER NO. 1
### (Preservation, Discovery, and Electronic Discovery)

Pursuant to the agreement of the Parties and for good cause shown, the

Court hereby enters the following order governing the preservation of documents

and the conduct of discovery, including electronic discovery.

1

## I.   **DEFINITIONS**

1.    "Bates Number" means the legible, unique fixed-length alphanumeric identifier containing eight (8) digits, plus a prefix identifying the producing Party (e.g., "US0000000").

2.    "Confidentiality Designation" means the Document's confidentiality designation pursuant to this Court's Case Management Order No. 2.

3.    "Court" means the United States District Court for the Northern District of Georgia.

4.    "Document" carries the meaning consistent with Federal Rule of Civil Procedure 34(a), and includes ESI and paper (i.e., hard copy) documents.

5.    "Electronically Stored Information" or "ESI" carries the meaning consistent with Federal Rule of Civil Procedure 34(a) and Federal Rule of Evidence 1001.

6.    "JPEG" refers to the Joint Photographic Experts Group's file format for storing graphic images using a compression algorithm.

7.    "Litigation" means the above-captioned litigation, Champs Sports Bar & Grill Co., *et al.* v. Mercury Payment Systems, LLC, *et al.*, Case No. 1:16-CV-00012-MHC.

8.    "Load File" means the load file format specified in Appendix A.

9.      "Metadata" means structured information about ESI that is created by the file system or application, embedded in the Document and sometimes modified through ordinary business use. Metadata, when used in reference to paper Documents, means the fields that the producing Party must populate pursuant to Section IV.A.1.

10.     "Native Format" means the format of ESI in the application in which such ESI was originally created.

11.     "OCR" means the optical character recognition technology used to read paper documents or electronic images of documents, and to output them to a searchable text.

12.     "Order" means this Case Management Order No. 1.

13.     "Parties" or "Party" means Plaintiffs and Defendants collectively, or each individually.

14.     "Preserve" or "Preservation" shall mean taking reasonable steps to prevent the partial or full destruction, alteration, testing, deletion, shredding, incineration, wiping, relocation, migration, theft, or mutation of Documents, as well as negligent or intentional handling that would make material incomplete or inaccessible. "Preservation" is to be interpreted broadly to accomplish the goal of

maintaining the integrity of all Documents reasonably anticipated to be subject to discovery under Fed. R. Civ. P. 26, and 45 in this Action.

15.    "Responsive Document" means any Document, excluding source code, that is responsive to any document requests served on the producing Party in the Litigation, that the producing Party has agreed to produce, that has been voluntarily produced by the producing Party as part of Rule 26(f) initial disclosures or otherwise, or that the producing Party has been ordered to produce by the Court.

16.    "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images, with multiple compression formats and resolutions.

## II.    SCOPE

1.    Except as otherwise ordered, discovery will be governed by the Federal Rules of Civil Procedure, the Local Rules of this Court, and this Court's Standing Order Regarding Civil Litigation.

2.    The procedures and protocols set forth herein shall govern the preservation and production of Responsive Documents between the Parties in the Litigation. Any practice or procedure set forth herein may be varied only by further order of the Court, unless all Parties agree to the variation.

3.     The Parties do not waive any objections to the production, discoverability, or confidentiality of Documents, including (without limitation) objections regarding the burden, over-breadth, or relevance of document requests related to Documents. Nothing herein shall be interpreted to require the disclosure of irrelevant information, relevant information that would be overly burdensome to locate and produce, or relevant information protected by the attorney-client privilege, work product immunity, or any other applicable privilege or immunity.

4.     The Parties shall make their best efforts to comply with—and resolve any differences concerning compliance with—this Order. If the Parties are unable to reach agreement, the Parties shall submit any dispute to the Court for resolution.

5.     Notwithstanding anything to the contrary in this Order, the following Document types need not be retained, processed, reviewed, or produced by the Parties in discovery except upon a showing of good cause: (a) recorded voice messages, including voice-mail in the Avaya Voice Player (.lvp) or WAVE (.wav) file formats; (b) Skype communications; (c) back-up tapes or other long-term storage media that were created strictly for use as a data backup or disaster recovery medium; (d) temporary data stored in a computer's random access memory (RAM), or other ephemeral data that are difficult to preserve without disabling the operating system; (e) commercially available operating and

application software and proprietary software code developed by or for the Parties; (f) deleted, slack, fragmented or other data only accessible by forensics; (g) on-line access data such as temporary Internet files, history, cache, cookies, and the like; (h) electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere in discoverable files and records; (i) other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere in discoverable files and records; (j) logs of calls made from mobile devices; (k) mobile text messages; (l) server, system, or network logs; and (m) electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

6.     Data that will not be produced pursuant to Section II.5 need not be disclosed.

7.     This Order shall have no effect on any producing Party's right to seek reimbursement for costs associated with collection, review, or production of Documents.

III.   **PRESERVATION**

    A.   **Identification of Custodians**

    1.   Within forty-five (45) days of the exchange of initial disclosures, the Parties are to jointly agree on the persons from whom email discovery will be sought as described herein ("Custodians"). The Parties are to meet and confer to determine the list of custodians.  During this process, each Party shall provide additional information sufficiently detailed to enable an opposing Party to evaluate that Party's proposed list of Custodians. Any other Party may propose the addition of Custodians to a Party's list and may dispute such designations or request additional information that may be needed to evaluate the sufficiency of a Party's list of Custodians. Each Party's list of Custodians, as either agreed to by all other Parties or otherwise ordered by the Court, shall be appended to this Order as "[Insert Party Name]'s Appendix C to Case Management Order No. 1" within 15 days after the Parties agree on the list of Custodians or the Court's order on any objections to the list.

    2.   Within sixty (60) days of the exchange of initial disclosures, each Party shall also provide to all other Parties a description of the computer systems and other Document storage systems in their possession, custody, or control that are reasonably likely to contain discoverable Documents and are not in the

7

direct possession of any individual custodians ("Non-Custodial Records"). Any other Party may request additional information that may be needed to evaluate such Non-Custodial Records. The Parties shall then meet and confer in an effort to agree on which Non-Custodial Records must be Preserved. The Non-Custodial Records required to be Preserved by each Party, as either agreed to by all other Parties or otherwise ordered by the Court, shall be appended to this Order as "[Insert Party Name]'s Appendix D to Case Management Order No. 1" within 15 days after the Parties agree or the Court orders.

### B.    Preservation Measures

1.    Except as otherwise exempted from this Order, the Parties shall, in good faith, preserve all potentially discoverable Documents under Federal Rule of Civil Procedure 26(b)(1).

2.    Except as expressly exempted in this Order, nothing in this Order shall relieve or excuse the Parties from their Preservation obligations imposed by the Federal Rules of Civil Procedure or other law or regulation.

3.    Preservation of potentially relevant Documents shall be reasonable and proportionate. The producing party shall take reasonable steps to collect and process Documents using methods that avoid spoliation of data. Provided that the Parties take reasonable steps to comply with this Order, the Parties will not seek

sanctions on a Party for failing to Preserve or produce Documents that were inadvertently lost. The Preservation undertaken pursuant to this Order and this Action shall extend until the conclusion of the Action, subject to paragraph III.B.4, below.

4.    The Parties shall meet and confer regarding any issues not addressed under this Order, including any reasonable methods to limit the scope of preservation and production, such as further limiting the type of Documents to be preserved, selection of relevant custodians, the relevant date range, and technology-assisted culling or review process (i.e., predictive coding and/or keyword search terms).

## IV.  PROCESSING SPECIFICATIONS AND DATA RETENTION

1.    Each producing Party shall collect and process Documents using forensically sound methods that avoid spoliation of data, and generate and preserve the MD5 hash values of all ESI based on the non-spoliated source native file.

2.    Original Documents.  Nothing in this Order shall eliminate or alter any Party's obligation to retain Native Format copies – including any associated Metadata – of all ESI preserved for and produced in this Litigation, and original versions of all paper Documents preserved for and produced in this Litigation.

9

Nothing in this Order shall alter a Party's obligation to retain data pursuant to the Federal Rules of Civil Procedure or a court order.

## V.   COLLECTION AND CULLING OF DOCUMENTS

1.   Each party shall make a reasonable and diligent effort to search for and collect reasonably accessible and Responsive Documents from each Custodian's e-mail systems utilized during the relevant time period and Non-Custodial Records identified in the Parties' meet and confer concerning preservation.

2.   The Parties will jointly agree to search terms, or other agreed methods, to be used to filter the Documents each Party will collect. The Parties will meet and confer regarding search terms and/or other methodologies and will agree to such terms within sixty (60) days of the exchange of initial disclosures.

3.   If, after the Parties begin to produce documents, any Party believes additional or different search terms should be used to locate Documents, that Party shall make a request in writing identifying the additional or different search terms. If the Parties disagree, they shall meet and confer on the request. If the Parties still cannot agree after meeting and conferring in good faith, the requesting Party may seek an Order from the Court.

4.     If a Party identifies Documents from its Custodians or other sources that may contain responsive data that is not reasonably accessible, it will provide the other Parties a description of the ESI that it claims is not reasonably accessible.

5.     In addition, the Parties will collect reasonably accessible, non-objectionable and responsive Documents from Non-Custodial Records using the agreed-to search terms.

6.     The Parties agree to collect reasonably accessible, non-objectionable, non-duplicative responsive hard copy data and produce it in accordance with the specifications set forth below.

## VI.     PRODUCTION FORMAT

### A.     General Provisions

1.     Metadata Fields and Processing.  Each of the Metadata and coding fields set forth in Appendix B which can be extracted from a Document shall be produced for that Document.  The Parties are not obligated to populate manually any of the fields in Appendix B if such fields cannot be electronically extracted from a Document, with the exception of the following, which shall be populated by the producing Party:

(a) BEGBATES,

(b) ENDBATES,

11

(c) BEGATTACH (IF APPLICABLE),

(d) ENDATTACH (IF APPLICABLE),

(e) CUSTODIAN,

(f) CONFIDENTIALITY (IF APPLICABLE),

(g) VOLUME,

(h) NATIVELINK (IF APPLICABLE), AND

(i) REDACTED (IF APPLICABLE).

2.     Text Files.  For each Document, a single text file shall be provided along with the image (or native) files and Metadata.  The text file name shall be the same as the Bates Number of the first page of the Document.  File names shall not have any special characters or embedded spaces.  Electronic text must be extracted directly from the native electronic file unless the document was redacted, an image file, or a physical file – in which case a text file created using OCR will be produced in lieu of extracted text.

3.     De-Duplication.  A Party is only required to produce a single copy of a Responsive Document.  De-duplication shall be subject to the following protocol: removal of duplicate Documents shall be done on exact duplicate Documents across all custodians using MD5 hash values.

4.   Load files.   Except where noted in Section VI.B.7 below, all Documents shall be produced in electronic format, with files suitable for loading into a Concordance-compatible litigation support review database. All productions will include both image and Metadata Load Files, with the Load File in the format described in Appendix A.

5.   Production Media.   The producing Party shall produce all Documents (whether in TIFF, JPEG, or Native Format), Load Files, and Metadata on Production Media or via file transfer protocol ("FTP"). Each piece of Production Media and FTP upload shall include a unique identifying label including the following information:

(a)   Name of the Litigation and its case number;

(b)   Name of the producing Party;

(c)   Date of the production (mm/dd/yyyy);

(d)   Volume number;

(e)   Bates Number range;

(f)   Confidentiality Designation; and

(g)   Notes regarding any irregularities in the production (e.g., whether it is replacement Production Media, as described in Section VI.A.6, below).

6.     <u>Replacement Production Media and FTP Upload</u>.  Any replacement Production Media and FTP upload shall cross-reference the original Production Media and FTP upload, clearly identify that it is a replacement, and cross-reference the Bates Number range that is being replaced.

7.     <u>Encryption and Password Protection</u>.   All Production Media or electronic files shared via FTP may be encrypted or password-protected, with the producing Party to provide a decryption key or password concurrently with (but under separate cover from) the production.

**B.     Electronically Stored Information**

1.     <u>Documents Produced in Native Format</u>. Certain file types—for example, Microsoft Excel spreadsheets and Microsoft PowerPoint Documents—can lose significant information and meaning when produced as an image.  The Parties have therefore agreed that, if a Document cannot be accurately represented and comprehended as an image, it will be produced in Native Format.   The production of Documents in Native Format shall be subject to the following protocol:

(a)    Any Documents produced in Native Format shall be produced with a Bates-numbered TIFF image slip-sheet stating the

14

Document has been produced in Native Format, and noting the Document's Confidentiality Designation.

(b)     Any Documents produced in Native Format shall be produced with the applicable Metadata fields set forth in Appendix B, including the "NativeLink" field.

(c)     Any Document produced in Native Format shall be given a file name comprised of the Document's Bates Number, and file extension (e.g., US00000000.xls).

(d)     Microsoft PowerPoint Documents shall be processed with hidden slides, with all speaker notes imaged at the end of presentation. If PowerPoint versions are not produced as native files, then (i) color PowerPoint Documents shall be converted to color JPEG images, and (ii) black and white PowerPoint Documents shall be converted to black and white TIFF images—provided, however, that proper grayscale printing shall be enabled to ensure that any dark colored text will not be hidden from view by other dark objects/drawings around the text.

(e)     If a Document to be produced in Native Format contains privileged information, it shall be produced in TIFF format with redactions. To the extent that Documents that fall under this paragraph contain privileged information and cannot be redacted or produced in TIFF format, such Documents shall be logged on a privilege log pursuant to Section VII.

(f)     For any Document that is not produced in Native Format, and is not adequately represented as an image (i.e., in TIFF or JPEG format), each Party reserves the right to request production in Native Format; such requests shall be made according to the following protocol:

(i)     The receiving Party shall provide the producing Party with the Bates numbers of each Document(s) that it is requesting be produced in Native Format, along with a brief description of why each Document being requested cannot be accurately represented and comprehended as an image.

(ii)    The receiving Party shall make this request within sixty (60) days after the close of all discovery—or, if a

16

production is made after the close of all discovery, within sixty (60) days after any such production is made.

(iii)    The producing Party shall respond to any such request as soon as practicable but in any event within twenty (20) days of receiving this request by (1) producing the requested Documents in Native Format to the extent reasonably practicable, or (2) responding to the receiving Party in writing, setting forth its position regarding the production of the requested Documents.

(iv)    If the Parties are unable to agree as to the production of the requested Documents in Native Format, they may submit the matter to the Court.

2.    Documents Produced as TIFF or JPEG Images.    All Documents except those described in Section VI.B.1, above, will be produced in TIFF or JPEG format, according to the following protocol:

(a)    For those Documents that require color to understand their full meaning or content, the producing Party shall use its best efforts to produce such Documents in single-page JPEG format.

17

(b)     All other Documents, other than those to be produced in Native Format, shall be produced as single-page Group IV TIFF images using at least 300 DPI print setting.

(c)     If a Document is produced in TIFF format, but requires color to understand its full meaning and content, the receiving Party may, in good faith, request that the Document be produced in color format. The producing Party shall not unreasonably deny such a request, and shall produce such Documents in JPEG format.

(d)     Each image (whether JPEG or TIFF) shall have a unique file name, which is the Bates Number of the Document.

(e)     Each image shall be branded with its corresponding Bates Number and Confidentiality Designation, using a consistent font type and size. The producing Party shall make reasonable efforts to avoid obscuring any part of the underlying image with the Bates Number or Confidentiality Designation.

3.     _Productions in Prior Actions._ Notwithstanding anything in this Order, a producing Party may produce ESI materials that were produced as TIFF or JPEG image files in a prior litigation or proceeding in the same manner as they were

produced in that litigation or proceeding, as long as that production preserved the same ESI attributes specified in this Order. The Parties will meet and confer to try to reach consensus on such productions. Notwithstanding the foregoing, a receiving Party may seek re-production of any such ESI in accordance with the processing specifications above—provided the ESI is reasonably available to the producing Party, and provided that the request is made on a document-by-document basis and for good reason.

4.  <u>Non-Responsive Attachments</u>.  The Parties agree that fully non-responsive attachments to responsive parent Documents need not be produced; however, non-responsive parent Documents must be produced if they contain any responsive attachments. If a producing Party withholds a fully non-responsive attachment, that producing Party will produce a Bates Numbered TIFF slip sheet in place of the attachment, along with all Metadata for that attachment as specified in Exhibit B—including the "FILENAME" and the "NONRESPONSIVE" Metadata fields—except that the "FULLTEXT" Metadata field need not be populated. The TIFF slip sheet for each withheld attachment shall state: "Non-Responsive Family Member." In the alternative, the producing Party may provide a spreadsheet listing all fully non-responsive attachments, including the Bates Number of the related parent Document in addition to the required Metadata fields listed above. The

receiving Party retains the right to request the production of any Document withheld solely on grounds of non-responsiveness. The Parties agree to meet and confer in good faith regarding any disputes arising under this provision.

5.    Embedded Objects.  Non-image files embedded in Documents will be extracted as separate Documents and treated like attachments to the Document in which they were embedded. Image files embedded within Documents, such as signature blocks, shall not be extracted as separate Documents.

6.    Redaction. If a file that originates in ESI needs to be redacted before production, the file will be rendered in TIFF, and the TIFF will be redacted and produced.

7.    Other ESI That Is Impractical to Produce in Traditional Formats (Including Structured Data). The Parties understand and acknowledge that certain categories of ESI are structurally complex, and do not lend themselves to production in Native Format or other traditional formats. To the extent that a response to discovery requires the production of such ESI—e.g., discoverable electronic information contained in a database—the Parties shall negotiate appropriate parameters for producing discoverable information and generating a report in a reasonably usable and exportable electronic file (e.g., Excel, CSV, or SQL format).

### C.    **Paper Documents**

1.    <u>TIFF Images</u>.   Paper Documents shall be scanned as single page, Group IV compression TIFF images using a print setting of at least 300 DPI. Each image shall have a unique file name—i.e., the Bates Number of the Document— and shall be branded with its corresponding Bates Number and Confidentiality Designation, using a consistent font type and size. The producing Party shall make reasonable efforts to avoid obscuring any part of the underlying image with the Bates Number or Confidentiality Designation.

2.    <u>OCR Acquired Text Files</u>.   When subjecting paper Documents to an OCR process, the settings of the OCR software shall maximize text quality over process speed. Any settings such as "auto-skewing," "auto-rotation," and the like should be turned on when Documents are run through the process.

3.    <u>Database Load Files / Cross-Reference Files</u>.   Paper Documents shall be provided with: (a) a delimited Metadata file (.dat or .txt) and (b) an image load file (.opt), as detailed in Appendix A.

4.    <u>Unitization</u>. In scanning paper Documents, distinct Documents shall not be merged into a single record, and single documents shall not be split into multiple records (i.e., paper Documents should be logically unitized). In the case of an organized compilation of separate Documents—e.g., a binder containing several

21

separate Documents behind numbered tabs—the Document behind each tab should be scanned separately, but the relationship among the Documents in the binder should be reflected in proper coding of the beginning and ending Document and attachment fields. The Parties will make their best efforts to unitize Documents correctly.

## VII.   **PRIVILEGE LOG**

1.      Pursuant to Federal Rule of Civil Procedure 26, the Parties agree to exchange privilege logs that describe the nature of the documents, communications, or other tangible things that are not produced or disclosed in a manner that will enable other Parties to assess the claim of privilege, immunity, or other similar claim, without revealing the information itself that is asserted to be privileged or protected, except that:

> (a)   Mercury shall have no obligation to log correspondence exchanged between and among its officers, employees, and agents and its inside and outside counsel generated after January 29, 2014; provided, however, that any such purportedly privileged communications that are solely between non-attorneys must be logged ; and

22

(b)   Plaintiffs WokChow and Archer's and Defendant Global shall have no obligation to log correspondence exchanged between and among their officers, employees, and agents and their inside and outside counsel generated after October 8, 2015; provided, however, that any such purportedly privileged communications that are solely between non-attorneys must be logged;

(c)   Plaintiffs Champs and Fashionadvice.com shall have no obligation to log correspondence exchanged between and among their officers, employees, and agents and their inside and outside counsel generated after January 4, 2016; provided, however, that any such purportedly privileged communications that are solely between non-attorneys must be logged;

(d)   Activities undertaken in compliance with the duty to preserve information (including, but not limited to, litigation hold letters) are protected from disclosure under Federal Rules of Civil Procedure 26(b)(3)(A) and (B).

2.   The Parties agree that all privilege logs shall include, but not be limited to, the following information:

23

(a)    The date of the Document;

(b)    The author of the Document;

(c)    The identity of all persons designated as addressees, copyees, or blind copyees;

(d)    The identity of any attorney named on the Document;

(e)    A description of the contents of the Document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the Document and the basis of the claim of privilege or immunity;

(f)    The type or nature of the privilege asserted (e.g., attorney-client privilege, work product doctrine, etc.); and

(g)    The Bates Numbers corresponding to the first and last page of the Document.

3.    Each member of a family of a Document (i.e., each member of a set of Documents in a parent-child relationship) that is withheld or redacted on grounds of privilege or immunity shall be identified individually (e.g., email attaching memorandum), but members of the same family—to the extent that such members are also withheld or redacted—may be logged together as a single entry on the privilege log.

4.    Any email chain (i.e., a series of emails linked together by email responses and/or forwarding) that is withheld or redacted on grounds of privilege or immunity may be logged together as a single entry on the privilege log, and may be identified/logged by the top-most email in the chain that is withheld or redacted.

## VIII.  DISCOVERY CONDUCT

1.    A Party who objects to a discovery request, but then responds that documents will be produced subject to the objection, must follow the procedures set forth on page 10 of this Court's Standing Order (Dkt. No. 3).

2.    The Parties will produce documents to which they have not raised an objection on a mutually agreeable timeline, which may include production on a rolling basis rather than waiting until all documents responsive to a request have been gathered.

3.    Plaintiffs may collectively depose a total of 25 non-party and Party witnesses, including employees and former employees. Unless otherwise agreed by the Parties or ordered by the Court, Plaintiffs, collectively, may take a maximum of 35 hours of Rule 30(b)(6) deposition testimony of each Defendant's corporate representatives, with each 7 hours of Rule 30(b)(6) deposition testimony counting as one of the foregoing 25 depositions allowed to Plaintiffs. Defendants collectively may depose 25 non-party and Party witnesses and may take a

maximum of 14 hours of Rule 30(b)(6) deposition testimony of each of Plaintiff's corporate representatives, with each 7 hours of Rule 30(b)(6) deposition testimony counting as one of the foregoing 25 depositions allowed to Defendants. Expert depositions do not count against the number of allowable depositions. The total number of depositions may be increased for good cause shown or by agreement of all Parties.

4.      The duration for each deposition will be governed by Federal Rule of Civil Procedure 30(d)(1).

5.      This Order does not limit any Party's right to object to or seek a protective order with respect to any deposition noticed or discovery served in the Litigation.

6.      Counsel will mark exhibits sequentially within a particular deposition with the prefix being the name of the deponent.

7.      Each witness may be questioned by no more than one counsel from each side, with the exception of depositions taken pursuant to Rule 30(b)(6). With respect to Rule 30(b)(6) depositions, each designee may be questioned by no more than one counsel from each side per topic.

8.      Parties and their employees and agents shall be deposed where they reside unless the Parties otherwise agree.

9.     To more efficiently handle the litigation and to reduce travel costs, the Parties shall cooperate to the extent practical to schedule and complete depositions so as to avoid unnecessarily repetitive trips to the same location.

10.     To minimize travel and related costs, counsel may participate in any deposition by telephone. Counsel intending to do so must notify counsel for the Party that noticed the deposition and counsel for the witness at least 3 business days before the date of the deposition. Counsel noticing the deposition shall make arrangements so that a conference call line is available during the deposition. Any Party appearing by telephone shall be responsible for any related costs. To the extent any counsel requests real-time video and/or text feed, that counsel is responsible for setting up and paying for the cost of that additional feature. Examining counsel and counsel intending to participate by telephone shall cooperate in good faith to facilitate such participation. No deposition shall be delayed or impeded by technical issues related to counsel appearing by telephone or by other non-present means.

11.     All depositions shall be conducted in accordance with the Federal Rules of Civil Procedure and the Federal Rules of Evidence unless otherwise required by law. All objections shall be stated concisely in a non-argumentative and non-suggestive manner. Counsel shall avoid making speaking objections.

27

12.     Any objection to a question shall be deemed to have been made on behalf of all other Parties, and need not be repeated by another counsel to preserve that objection on behalf of such other counsel.

13.     All objections except as to the form of the question or foundation are reserved until trial or other use of the deposition transcript.

IT IS SO ORDERED.

Dated: _8/2/16_

_____
HONORABLE MARK H. COHEN
UNITED STATES DISTRICT JUDGE

## APPENDIX A: REQUESTED LOAD FILE FORMAT FOR ESI

1.      Delimited Text File. A delimited text file (DAT File) containing the fields listed in 3(a)(v) should be provided. The delimiters for the file should be Concordance defaults:

- Comma – ASCII character 20 ( )

- Quote – ASCII character 254 (þ)

- Newline – ASCII character 174 (®)

2.      Image Cross-Reference File (Opticon Load File). The Opticon cross-reference file is a comma delimited file consisting of six fields per line. There must be a line in the cross-reference file for every image in the database. The format for the file is as follows:

ImageID, VolumeLabel, ImageFilePath, DocumentBreak, FolderBreak, BoxBreak, PageCount

- ImageID: The unique designation that Concordance and Opticon use to identify an image. This should be the Bates Number of the Document.

- VolumeLabel: The name of the volume.

- ImageFilePath: The full path to the image file.

- DocumentBreak: If this field contains the letter "Y," then this is the first page of a Document.   If this field is blank, then this page is not the first page of a Document.

- FolderBreak: Leave empty.

- BoxBreak: Leave empty.

- PageCount: Number of pages in the Document.

Sample Data

PROD00000001,VOL001,E:\100\ PROD00000001.TIF,Y,,2

PROD00000002, VOL001,E:\100\ MT00000002.TIF,,,,

PROD00000003, VOL001,E:\100\ MT00000003.TIF,Y,,,4

PROD00000004, VOL001,E:\100\ MT00000004.TIF,,,,

PROD00000005, VOL001,E:\100\ MT00000005.TIF,,,,

PROD00000006, VOL001,E:\100\ MT00000006.TIF,,,,

## APPENDIX B: REQUESTED METADATA FIELDS

| FIELD NAME | EXAMPLE / FORMAT | DESCRIPTION |
|---|---|---|
| BEGBATES | US00000001 (Unique ID) | The Bates Number associated with the first page of the Document. |
| ENDBATES | US00000003 (Unique ID) | The Bates Number associated with the last page of the Document. |
| BEGATTACH | US00000001 (Unique ID Parent-Child Relationships) | The Bates Number associated with the first page of the parent Document. |
| ENDATTACH | US00000008 (Unique ID Parent-Child Relationships) | The Bates Number associated with the last page of the last attachment in the Document family. |
| ATTACHCOUNT | Numeric | The number of attachments to the Document. |
| PGCOUNT | 3 (Numeric) | The Document's page count. |
| VOLUME | VOL001 | The name of CD, DVD or Hard Drive (vendor assigns). |
| SENTDATE | MM/DD/YYYY | The date the email was sent. |
| SENTTIME | HH:MM | The time the email was sent. |
| CREATEDATE | MM/DD/YYYY | The date the document was created. |
| CREATETIME | HH:MM | The time the document was created. |
| LASTMODDATE | MM/DD/YYYY | The date on which the Document was last modified. |
| LASTMODTIME | HH:MM | The time when the Document was last modified. |
| RECEIVEDDATE | MM/DD/YYYY | The date the Document was received. |
| RECEIVEDTIME | HH:MM | The time the Document was received. |
| DOCTITLE | Resume.docx | The Document's extracted document title. |
| EMAILSUBJECT | Re: Vacation | Subject line extracted from an email. |
| AUTHOR | jsmith | The author of the Document from entered Metadata. |

| FROM | Joe Smith <jsmith@email.com> | The display name and email of the email's author. If only the author's email address is given, then just list the email address. |
|---|---|---|
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the recipient(s) of an email. If only the email address is given, then just list the email address. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the copyee(s) of an email. If only the email address is given, then just list the email address. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the blind copyee(s) of an email. If only the email address is given, then just list the email address. |
| CUSTODIAN | Joe Smith | The Document's custodian or source. |
| DUPLICATE CUSTODIANS | Bob Smith, Jim Smith | The Document's duplicate custodians or sources. |
| TIMEZONE | PST, CST, EST, etc. | The time zone the Document was processed in. Note: This should be the time zone where the Documents were located at time of collection. |
| FILEPATH | Joe Smith/email/Inbox Joe Smith/email/Deleted Items Joe Smith/Loose Files/Accounting/... Joe Smith/Loose Files/Documents and Settings/... | Fully qualified original path to the source folder, files, and/or mail stores. |
| APPLICATION | MS Word, MS Excel, etc. | Type of Document by application. |
| PAPER | Y | Y (i.e., "Yes") if the Document originated as a paper Document; otherwise, blank. |

| UNREAD | Y or N | Y (i.e., "Yes") if an email is unread; N if it has been read. This value is blank for attachments and other non-email Documents. |
|---|---|---|
| FILEEXT | XLS | The Document's file extension. |
| FILENAME | Document Name.xls | The Document's file name. |
| FILESIZE | 125256 | The Document's File size in KB. |
| HASH | 9CE469B8DFAD1058C3B1E745001158EA | The MD5 or SHA Hash value or "de-duplication key" assigned to the Document. |
| NONRESPONSIVE | Y or N | Y (i.e., "Yes") for any attachment that is withheld as non-responsive |
| CONFIDENTIALITY | Confidential or Counsel Only | The Document's Confidentiality Designation. |
| NATIVEFILE | Y | Y (i.e., "Yes") if the Document was produced in Native Format; otherwise, blank. |
| NATIVELINK | D:\NATIVES\US00000001.xls | The full path to a native copy of the Document. |
| TEXTPATH | D:\TEXT\US00000001.txt | The path to the full extracted text of the Document. There should be a folder on the deliverable, containing a separate Unicode text file per Document; these text files should be named with their Bates Numbers.<br><br>Note: emails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the Document should be provided |